IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02162-MSK-KMT

GAIL TAFOYA,

       Plaintiff,

v.

DEAN FOODS COMPANY,
DEAN WEST, LLC, and
SOUTHERN FOODS GROUP, LLC, d/b/a Meadow Gold Dairy

       Defendants.

_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants Motion to Dismiss **(# 15)**, the Plaintiff's response **(# 26)**, and the Defendants' reply **(# 30)**.

According to the Amended Complaint **(# 8)**, while employed by the Defendants, Ms. Tafoya was "adamant in bringing infractions of the collective bargaining agreement to the attention of management, both on her behalf and on behalf of other employees." In retaliation for these complaints, she was often assigned particularly unpleasant tasks, including cleaning out trash cans. The Amended Complaint recites a specific incident from November 18, 2005, when Ms. Tafoya and several other women met with the Defendants' Human Resources Manager "to discuss harassment from, and the behavior of" their supervisor, Jose Gonzales. Ms. Tafoya and the women later supplied statements and participated in meetings to discuss "Mr. Gonzales'

1

discriminatory conduct." In January 2006, the Defendants completed their investigation of the women's complaints and concluded that no action with regard to Mr. Gonzales was necessary.

On January 22, 2007, the Defendants conducted an audit of Ms. Tafoya's performance and determined that she had been "falsifying" production records.[1] She was briefly suspended without pay and was terminated a few days later.

Ms. Tafoya's Amended Complaint alleged three causes of action: (i) age discrimination, in violation of 29 U.S.C. § 621 *et seq.*; (ii) sex discrimination, in violation of both Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-101 *et seq.*; and (iii) retaliation, in violation of both Title VII, 42 U.S.C. § 2000e-3, and CADA, C.R.S. § 24-34-101 *et seq.* During the proceedings in this case, Ms. Tafoya has voluntarily dismissed her age and sex discrimination claims **(# 47)**, leaving only the retaliation claim for adjudication.

The Defendants move to dismiss **(# 15)** the retaliation claim, arguing that Ms. Tafoya fails to state a claim for prohibited retaliation, in that she does not allege that she opposed any acts of unlawful discrimination, but only that she opposed violations of the Defendants' contract with its union.

**Analysis**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most

---

[1]Specifically, Ms. Tafoya was supposed to remove 5 containers of milk from the production line every 15 minutes and record their weight. She alleges that she was trained and instructed to remove 5 containers every 15 minutes, to weigh 2 of them, and to record those weights with regard to the remaining 3 unweighed containers as well.

favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed.[2] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Two recent decisions from the Supreme Court have clarified the analysis that the Court undertakes when reviewing a pleading under Rule 12(b)(6) standards. First, although "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must have sufficient factual assertions "to raise a right to relief above the speculative level." *Id.* Second, because the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," the court must

---

[2] Both parties attached numerous exhibits to their motions. When parties rely on material outside the pleadings on a Rule 12(b)(6) motion, the Court may either disregard to supplemental material or else convert the motion to one for summary judgment under Fed. R. Civ. P. 56, giving the parties notice and an opportunity to submit additional evidentiary material. Here, the Court chooses to disregard all supplemental material beyond that specifically discussed below.

first identify and disregard averments that "are no more than conclusions [which] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). The court then examines the remaining, well-pled factual allegations, assuming their veracity, and determine whether the plausibly give rise to an entitlement to relief. *Id.*

To state a *prima facie* claim for retaliation under either Title VII or CADA,[3] Ms. Tafoya must allege sufficient facts to show that: (i) she engaged in an activity protected by those statutes; (ii) she suffered an adverse employment action; and (iii) there is some indication of a causal connection between the protected activity and the adverse action. *Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009). "Protected activity" includes situations in which an employee reports or complains about actions by co-workers or supervisors where those actions would constitute a practice made unlawful by Title VII – namely, discrimination on the basis of sex, race, national origin, etc. *Crawford v. Metropolitan Government of Nashville*, 129 S.Ct. 846, 850-51 (2009). However, it is essential that the employee's activity clearly and expressly involve complaints of prohibited discrimination, not simply complaints about unfair working conditions, disparate application of work rules, or other acts which, although unwelcome, do not implicate the particular evils of invidious discrimination that the civil rights

---

[3]The parties' briefs exclusively cite federal law interpreting Title VII and other federal anti-discrimination laws. Neither party has cited to authority indicating whether the analysis of a retaliation claim under CADA differs from that of a claim under federal civil rights laws. This Court's own research has not revealed any case in which the Colorado courts have articulated an analytical paradigm to be used in retaliation cases brought under CADA. However, in *George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. App. 1997), the court, construing an age discrimination claim under both the federal Age Discrimination in Employment Act and CADA, noted that although Colorado courts construing CADA claims "are not bound by federal court determinations, they are persuasive authority." In the absence of a suggestion to the contrary, the Court will thus assume that retaliation claims under CADA are analyzed in the same manner as retaliation claims under federal civil rights statutes.

statutes were enacted to curtail. *Zokari v. Gates*, 561 F.3d 1076, 1081-82 (10th Cir. 2009) (employee's complaint about being forced to take English class not protected activity where employee never complained that the request discriminated against him because of his race or national origin); *Gruppo v. Fedex Freight System, Inc.*, 296 Fed.Appx. 660, 663-64 (10th Cir. 2008) (unpublished) (employee's generalized complaints that conduct was "possibly illegal," without specifying the manner in which it might be so, insufficient to constitute protected activity); *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008) *and cases cited therein*.

The Amended Complaint contends that Ms. Tafoya's protected activity entailed "rais[ing] concerns with [the Defendants] about violations of the Union contract on behalf of herself and other employees" and that the Defendants "retaliated against Ms. Tafoya for exercising her First Amendment and grievance rights under the collective bargaining agreement." The Amended Complaint makes reference to Ms. Tafoya raising both generalized grievances about "infractions of the collective bargaining agreement," as well as particularized grievances about Mr. Gonzales' discriminatory conduct. The former category would not amount to protected activity under Title VII, but the latter would. Ms. Tafoya's response to the Motion to Dismiss clarifies that, among the "infractions of the collective bargaining agreement" she was challenging were breaches of portions of the agreement that prohibited sex discrimination.

In her response, Ms. Tafoya attaches copies of a memorandum memorializing an interview with her on or about November 30, 2005.[4] *Docket* # 28, Ex. 6. Although that

---

[4] The Court assumes that this document is referenced in the Amended Complaint as embodying the "statement" given by Ms. Tafoya during this time period. *Docket* # 8, ¶ 34. This document is central to Ms. Tafoya's retaliation claim and the authenticity of the exhibit is not

document recites a litany of complaints by Ms. Tafoya, most of which simply reflect rudeness, arbitrariness, favoritism, or discouraging conduct toward her by Mr. Gonzales, there are a few references to conduct that, taken in the light most favorable to Ms. Tafoya, could arguably be deemed complaints of national origin discrimination.  For example, Ms. Tafoya alleges that Mr. Gonzales denied her request for a day off, but granted a similar request for Maria Burron.  Ms. Tafoya speculated that the difference in treatment might be attributable to the fact that both Ms. Burron and Mr. Gonzales are both Spanish-speaking and from Mexico, while Ms. Tafoya is neither.[5]  Arguably, this could be read to constitute an allegation that Ms. Tafoya was being subjected to discrimination on the basis of her national origin.[6]  This, therefore, would constitute conduct protected by Title VII and sufficient to plead the first element of a retaliation claim.[7]

---

disputed by the Defendants.  Accordingly, the Court deems that document to be part of the Amended Complaint and thus, considers the contents of the document in evaluating the Rule 12(b)(6) motion.

[5]Later, Ms. Tafoya relates a similar incident in which an individual named Jody helped a Mexican-born, Spanish-speaking employee retrieve a pallet, but refused to do so for Ms. Tafoya.

[6]The Court notes another portion of the memo, in which Ms. Tafoya complains that in January 2004, she was assigned to "close the 35-pounder lids," a task requiring significant upper body strength.  Ms. Tafoya alleges that "Typically the men do this task," and that "I had never before seen another female be asked to perform this task."  It is difficult to imagine that this allegation could be construed as raising a complaint of prohibited sex discrimination.  Notwithstanding the troubling aspect of there being "male only" jobs, the fact that no other women were ever assigned to this job makes it impossible for Ms. Tafoya to demonstrate that her assignment to perform that task was because of her sex, as opposed to some other characteristic about her.

[7]Ms. Tafoya also submits a letter apparently dated February 11, 2006, to the Defendants' corporate offices, commenting on the events of 2005.  *Docket* # 28, Ex. 9.  In that letter, she makes a passing reference to workplace "civil rights misconducts and violations, as it pertains to state and federal labor laws for discrimination and harassment."  Assuming, without necessarily finding, that these conclusory assertions of discrimination are sufficient to constitute additional instances of protected conduct under Title VII, the analysis herein is nevertheless unchanged.

In reply, the Defendants point out that if Ms. Tafoya is relying on her November 2005 complaints to support her retaliation claim, she has failed to adequately allege the third element of a *prima facie* case – that her January 2007 termination is causally connected to her November 2005 protected conduct. To allege the necessary causal connection, employees typically rely on the inference of causation that is supplied by close temporal proximity between the protected conduct and the adverse action. However, temporal proximity alone justifies an inference of causation only when the two events are <u>very</u> close in time, usually on the order of a few weeks or less. *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006); *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1204 (10th Cir. 2008) (noting that "we have held that a one-and-a-half-month period may suffice to establish causation on a prima facie basis, but a three-month period, standing alone, will not suffice"). Where the protected activity and adverse action are not sufficiently close in time to warrant an inference of causation, additional facts suggesting a causal connection must be alleged. *Id.*

Here, if Ms. Tafoya's November 2005 complaints of discrimination are the protected activity she relies upon, her termination more than a year later is too remote in time to permit an inference that the termination was the result of her complaints of discrimination. Thus, the Court examines whether she alleges any other facts that would suggest a causal connection between conduct protected by Title VII and her termination. Nothing alleged in the Amended Complaint gives any additional suggestion that her 2007 termination was somehow connected to her 2005 complaints against Mr. Gonzales. Indeed, the Amended Complaint indicates that Ms. Tafoya was transferred to another department in June 2006, and was no longer under the supervision of Mr. Gonzales. In the absence of close temporal proximity or other allegations suggesting a

causal connection between her 2005 protected conduct and her 2007 termination, Ms. Tafoya fails to state a claim for retaliation under Title VII.[8]

Accordingly, the Defendants' Motion to Dismiss **(# 15)** is **GRANTED**. The sole remaining claim in this action, sounding in retaliation, is **DISMISSED**. There being no remaining claims, the Clerk of the Court is directed to close this case.

Dated this 26th day of August, 2009

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

---

[8] Normally, the Court does not grant a Rule 12(b)(6) motion to dismiss without affording the plaintiff an opportunity to amend the complaint to cure any pleading deficiency. Here, Ms. Tafoya's response brief has not requested the opportunity to amend her Complaint should her pleading of the retaliation claim be found wanting, and given that her response appears to have come forward with much, if not all, of the evidence she would rely on, the Court has some doubt that granting leave to amend would be productive. Moreover, the Court notes that the Scheduling Order's **(# 24)** deadline for the parties' amendment of pleadings expired in March 2009. Accordingly, the Court does not *sua sponte* grant leave to amend, but also expresses no opinion as to how a suitably-supported motion for leave to amend, accompanied by a facially-sufficient proposed amended pleading, would be resolved.